GRIFFIN, J.
The State appeals an order of the trial court suppressing statements made by appellant Michael Thomas Raines [“Raines”] on the ground that the police had used misleading tactics in dealing with Raines’s counsel, David Smith. Raines cross appeals, contending the trial court erroneously denied his motion to dismiss based on the State’s interference with his right to present a witness. We affirm the order on *422 the cross-appeal, but reverse the suppression order.
On February 20, 2002, Bernard Gibson was shot in Cocoa Beach. On February 22, 2002, while en route back home from Cocoa to Indiana, defendant Raines stopped at a police station in Nashville, Indiana, and told a deputy: “I shot and killed a guy in Florida and it was self-defense and I wanted to turn myself in.” The deputy called the Cocoa Beach police to report this conversation.
On the same day, Raines sought legal advice from Attorney Roy Graham [“Graham”] in Bloomington. Graham, in turn, contacted Attorney David Smith [“Smith”], an experienced Indiana attorney who practiced criminal law and who was also licensed to practice in Florida. Raines and Graham went to Smith’s office and conferred. The record does not reflect what Smith was told at that meeting because Raines invoked attorney/client privilege. We do know Smith was told that Detective Washburn [“Washburn”] of the Cocoa Beach police department wished to speak to Raines.
Smith called Washburn. He described the purpose of the call:
I had been asked to make contact with Detective Washburn to let him know that Mr. Raines wanted me to assist him in answering questions.
When Washburn returned the call, he told Smith:
As I recall, he indicated he was working on some sort of homicide investigation. He needed to speak with Mr. Raines as soon as possible. He wanted to talk to him about — I mean, I didn’t get any information about the case other than it was my understanding he was in urgent need to speak with Michael as soon as he could.
Smith said he couldn’t quote what Wash-burn said, but it was his understanding of the conversation that Raines was a witness in a pending investigation. When asked if Washburn told him Raines was a possible suspect, his response was: “Not that I recall.”
After the call, Smith contacted Raines, who later came back to Smith’s office. He met with Raines and his mother. He advised them: “It’s probably the only way to do this, is to hit it square on and see what they’ve got.” A call was then placed to Washburn. Washburn began the telephone interview by asking: “I was wondering if you could explain to me what happened and what your involvement was in it.” Raines then described the event from his point of view, readily admitting that he shot the victim, just as he had already told the Nashville, Indiana, deputy.
When asked if he knew, prior to picking up the phone to call Washburn, that Raines had shot and killed somebody, Smith said: “I can’t say for sure....” He conceded, however, that very quickly during the conversation, it was clear that Raines had done the killing. On page three of the taped telephone interview, the question was asked:
Q: Okay, go ahead, sir. What happened next? You went to grab the gun and it went off?
A. Yeah, it went off. Somehow I got it from his hands and within a few seconds he threw something and I shot.”
At no point did Smith make any effort to advise Raines not to continue answering Washburn’s questions.
Based on these facts, Raines puts forth the following legal argument:
Here, Mr. Raines’ statements were the direct result of Detective Washburn’s deception. As attorney Smith testified, had he been advised of the true status of *423 his client he would have advised Mr. Raines to remain silent. Moreover, because Detective Washburn deliberately deceived Mr. Raines’ attorney, Mr. Raines could not and did not have a full awareness that he was waiving his rights or the consequences of that waiver.
The trial court framed the issue to be:
Although an officer can make misrepresentations to a defendant to elicit the facts of the situation the issue is whether or not he can make those representations or misinformation of facts to a lawyer to get the lawyer to allow the client to be interviewed by the detective.
The answer to the question, no doubt, is: “It depends,” but the question has very little to do with the undisputed facts present here.
Raines had already admitted the killing to Indiana police. He had consulted with two attorneys and was personally accompanied and advised throughout the telephone interview by an attorney licensed in both Indiana and Florida. The suggestion that the law would allow, much less require that this criminal’s confession be suppressed because the Cocoa Beach police department detective failed to inform Smith that Raines was the target of this investigation is nonsense. This case is nothing like Haliburton v. State, 514 So.2d 1088 (Fla.1987), where police subterfuge prevented the suspect from communicating with his lawyer. Here, the lawyer was fully involved and had no right or expectation of being told what the policeman was thinking. No matter how many epithets Raines hurls at Washburn and his conduct, and there are many, including “fraud”, “lies”, “misrepresentation”, “deceit”, the facts do not change and these facts do not give rise to a constitutional violation in obtaining Raines’s statement.[1]
Even if it is true that Smith was bamboozled by Washburn’s failure to disclose (or, if you will, “concealment”) that Raines was more than a witness to the Florida homicide, his bamboozlement is not a basis for suppression. There is no fiduciary duty of full disclosure between police and criminal defense counsel. Besides, Washburn certainly had the right to expect that Raines had told his lawyer that he was the shooter, since he had made this admission to the Indiana police. If Smith knew Raines was the shooter, he had enough facts to properly advise his client. If he did not know, Washburn is not the one to blame.
AFFIRMED in part; REVERSED in part.
MONACO, J., concurs.
THOMPSON, J., concurring in part, dissenting in part, with opinion.

. As the State points out in its reply, Raines not only alleges misconduct by Washburn in failing to disclose that he was the target of the investigation, but by suggesting that Raines's explanation that he was acting in self-defense exonerated him from liability. Even if there were evidence of this in the record, this assertion is meritless. Raines’s "explanation” could not exonerate him; only the facts would exonerate him. Raines’s counsel could not reasonably have relied on such a proposition of law.